## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jami Williams,<br><br>        Plaintiff,<br><br>v.<br><br>Higher Education Loan Authority of the State of Missouri,<br><br>        Defendant. | Case No. 0:24-cv-2603<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1. This action arises out of violations of the Defendant's violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* ("EFTA") and Regulation E, 12 C.F.R. §1005.1 *et seq.* and for common law conversion and civil theft.

2. In the context of the current litigation, the plaintiff asserts that Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA"), in its capacity as a financial services provider, has engaged in practices that violate the Electronic Fund Transfer Act (EFTA).

3. Specifically, the allegations pertain to unauthorized electronic fund transfers, failure to properly disclose terms and conditions of electronic transactions, and other violations that have resulted in financial harm to the Plaintiff.

4. The Plaintiff seeks to hold Defendant MOHELA accountable for these serious violations, asserting that MOHELA's actions have not only breached statutory obligations under the EFTA but have also caused undue distress and economic

-1-

damages to the Plaintiff.

5.  The lawsuit demands corrective measures, statutory damages, and any other relief deemed appropriate by the court to address and rectify Defendant MOHELA's violation with federal electronic fund transfer regulations.

## JURISDICTION

6.  Jurisdiction of this Court arises under 15 U.S.C. § 1693m, 28 U.S.C. § 1367 for pendent state law claims, and common law.

7.  This Court has jurisdiction under 28 U.S.C. § 1331 because the plaintiff's claims arise under federal law, specifically the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 et seq. The EFTA is a federal statute designed to protect consumers engaged in electronic fund transfers, and Defendant MOHELA's alleged violations of this statute directly implicate federal law.

8.  Venue is proper because the acts and transactions occurred here, Plaintiff resides in Minnesota, and Defendant transacts business here.

9.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this judicial district. The plaintiff, a resident of Minnesota, experienced the alleged unauthorized electronic fund transfers and the resulting harm within this district.

10. To the extent that the Plaintiff's complaint includes claims under state law, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or

controversy.

11.   Defendant has transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via the telephone while Plaintiff was located within and permanently residing within the State of Minnesota.

12.   Defendant has transacted business within the State of Minnesota by operating a student loan collection agency, making collection calls into Minnesota, and/or directing debt collection activities to Minnesota.

13.   Defendant MOHELA is subject to personal jurisdiction in the District of Minnesota due to its continuous and systematic contacts with the state. Specifically, MOHELA conducts significant business activities within Minnesota, including servicing student loans for residents of Minnesota, engaging in advertising and marketing efforts directed at Minnesota residents, and maintaining communications and contractual relationships with borrowers residing in Minnesota.

14.   Defendant MOHELA is engaged in the administration and servicing of student loans across state lines, operates within the stream of interstate commerce, further establishing the appropriateness of federal jurisdiction in this matter.

15.   Defendant MOHELA is not entitled to sovereign immunity for its student loan collection activities under the 11th Amendment.  Pellegrino v. Equifax Info. Servs., LLC, No. 123CV1166LMBLRV, 2024 WL 37062, at *8 (E.D. Va. Jan. 2, 2024).

**PARTIES**

16.   Plaintiff Jami Williams (hereinafter "Plaintiff") is a natural person who resides in the City of Fridley, County of Anoka, State of Minnesota, and is a "consumer" as

that term is defined by 15 U.S.C. § 1693a and 12 CFR § 1005.2(e) of EFTA.

17.     Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

18.     Defendant Higher Education Loan Authority of the State of Missouri, a/k/a MOHELA, (hereinafter "Defendant" or "MOHELA") services student loan debt and regularly engages in the collection of student loan debt. Defendant has its principal place of business in Chesterfield, Missouri, and does business in every State, including Minnesota.

19.     Defendant has registered itself as a foreign corporation operating in Minnesota with the Office of the Secretary of State.

20.     Defendant's Registered Agent is C T Corporation System Inc, located at 1010 Dale St N, St Paul, MN 55117–5603.

21.     Defendant uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

22.     Defendant performs electronic funds transfers as part of its collection activities and therefore it is also a covered "person" under EFTA. Reg. E, 12 C.F.R. § 1005.2(i).

23.     Defendant and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff that as further described in this complaint.

## FACTUAL ALLEGATIONS

24.     Defendant is the servicer of one of Plaintiff's student loans to the federal Department of Education.

25.   Sometime on or about March 4, 2024, Defendant initiated an electronic fund transfer ("EFT") from Plaintiff's personal bank account for $6,608.77.

26.   Plaintiff did not authorized this EFT, did not benefit from it, and was not given advanced notice of it.

27.   The fraudulent EFT overdrew Plaintiff's personal bank account at Huntington Bank by $5,885.21.

28.   Plaintiff was immediately alerted to this fraudulent EFT and disputed on that same day with Huntington Bank.

29.   Huntington Bank thereafter investigated under the requirements of EFTA, found it to be an unauthorized EFTA, reversed it against this Defendant, and then credited Plaintiff's account back for the $6,608.77.

30.   Previously, Plaintiff had made regular, on-time, monthly payments to Defendant in the amount of $68.32 pursuant to her federal student loan repayment agreements.

31.   Defendant used the access device information it had previously obtained from Plaintiff to initiate this fraudulent EFT for approximately 97 times the amount of Plaintiff's regularly monthly payment.

32.   Defendant's fraudulent EFT against Plaintiff's personal bank account was illegal, unauthorized, and done in violation of EFTA.

33.   Defendant drained all of Plaintiff's funds from her account and left her penniless and over drafted by nearly $6,000.

34. Defendant committed civil theft, conversion, and fraud when it falsely represented to Plaintiff's bank that it was authorized to withdraw the $6,608.77 from Plaintiff's bank account when it was not.

35. Defendant benefited from this fraudulent act and Plaintiff was seriously harmed by it.

36. Plaintiff was extremely upset by Defendant's illegal EFT and was panicked about how she would ever be able to catch up on her bills, pay her other creditors, eat, put gas in her car, and otherwise provide for her family.

37. Defendant made this EFT from Plaintiff's Huntington Bank account without any written authorization, written agreement, or prior notice, in violation of EFTA.

38. The above-described debt collection communications and conduct directed by Defendant toward Plaintiff represent numerous and multiple violations of the EFTA and Reg. E.

### Summary

39. The above-described collection conduct by Defendant in their efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the EFTA and Minnesota law.

40. These collection actions taken by Defendant and the collection employees employed by them, were made in violation of multiple provisions of the EFTA and Minnesota law, including but not limited to all of the provisions of those laws cited herein.

41. These violations by Defendant were knowing, willful, negligent and/or intentional,

and they did not maintain procedures reasonably adapted to avoid any such violations.

42. Defendant's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the EFTA and Minnesota law provide Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt and/or electronic fund transfer.

43. Defendant's deceptive, misleading, and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to their collection efforts because Plaintiff could not adequately respond to their demand for payment of this debt.

### *Respondeat Superior Liability*

44. The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of these Defendant who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

45. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

46. By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

47. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat

Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the state and federal law in its attempts to collect this debt from Plaintiff.

## TRIAL BY JURY

48.  Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## CAUSES OF ACTION

## COUNT I.

## FRAUD

49.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50.  The Minnesota Court of Appeals has held that:

> A contract is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and is an assertion on which the recipient is justified in relying. Restatement of Contracts (Second) § 164(1) (1981).

> A misrepresentation is fraudulent if it is intended to induce a contract and either is known to be false or made without knowledge of whether it is true or false. *Id.* at § 162(1). …

> A misrepresentation is material if it would be likely to induce a reasonable person to manifest his or her assent or the maker knows that for some special reason it is likely to induce the particular recipient to manifest such assent. *Id.* at § 162(2); *see also Pasko v. Trela,* 153 Neb. 759, 763, 46 N.W.2d 139, 143 (1951).

Carpenter v. Vreeman, 409 N.W.2d 258, 260–61 (Minn. Ct. App. 1987).

51.   Defendant and its employees and agents fraudulently induced Plaintiff's bank to pay this EFT by their deliberate misrepresentation of material facts, as well as their omission of other material facts which it had a duty to disclose to Plaintiff, namely, the amount of the payment and her obligation to pay it.

52.   Defendant's misrepresentations to Plaintiff's bank that Plaintiff owed this alleged debt were material misrepresentations of fact because they influenced the Plaintiff's bank's judgment and decisions regarding executing this EFT.

53.   Defendant knew that its misrepresentations to Plaintiff's bank about the EFT were false at the time they made them and that its omissions were material.

54.   Defendant's misrepresentations about the EFT were made intending that Plaintiff's bank would rely on them.

55.   Defendant benefitted from these fraudulent misrepresentations to Plaintiff's bank about the EFT, namely, they were paid funds that were not authorized and not due and owing.

56.   Plaintiff's bank reasonably relied and acted upon Defendant's misrepresentations and executed this fraudulent EFT to Plaintiff's detriment.

57.   Plaintiff was proximately harmed as a direct result of Defendant's false representations to Plaintiff's bank and has suffered actual damages made in reliance thereon, as well as other damages, in an amount to be proven at a trial by jury.

## COUNT II.

## DECLARATORY RELIEF

58.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59.  An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties in that Plaintiff contends that there no legal obligation to pay this alleged existed, whereas Defendant disputes this contention and by its conduct contends that such an obligation does exist.

60.  Plaintiff desires a judicial determination of Defendant's rights and duties, and a declaration as to the existence or non-existence of the alleged debt, and if it so exists, the extent of the liability of Plaintiff to Defendant, if any.

61.  A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain Plaintiff's rights and duties because Plaintiff's personal business affairs are seriously impaired, and Plaintiff is otherwise suffering a financial burden by this unsettled state of affairs.

62.  Plaintiff has already suffered from damage by having made payments on this alleged debt and by Defendant's threats to attempts to collect it from Plaintiff.

63.  Declaratory relief is therefore appropriate in order to bring peace to the parties and prevent Defendant's from causing further unwarranted and unjust damage to Plaintiff.

## COUNT III.

## VIOLATION OF ELECTRONIC FUNDS TRANSFER ACT & REGULATION E

## 15 U.S.C. §1693 *et seq.* & 12 C.F.R. §1005.3 *et seq.*

64.  Plaintiff incorporates by reference all allegations contained in the above paragraphs

as though fully set forth here.

65.    EFTA subjects electronic funds transfers made by covered entities to procedural requirements designed to protect consumers from transactions made in error or without the consumer's consent.

66.    Plaintiff is a "consumer" as that term is defined in the EFTA (15 U.S.C. § 1693a).

67.    Pursuant to 15 U.S.C. § 1693b(d)(1) and 12 C.F.R. § 1005.3, Defendant was a covered person at all times relevant to this action, subject to regulation under EFTA.

68.    Defendant obtained Plaintiff's "access device" to initiate an unauthorized electronic fund transfer from her personal bank account through the use of fraud, coercion, and/or deceit in violation of EFTA.

69.    Plaintiff has suffered damages as a result of Defendant's violations of the EFTA.

70.    Pursuant to 15 U.S.C. § 1693f(e) and 1693m, EFTA and Reg. E, Plaintiff seeks statutory damages, actual damages, treble damages, and reasonable costs and attorneys' fees from Defendant.

### COUNT IV.

### CONVERSION

71.    Plaintiff incorporates by reference all allegations contained in the above paragraphs as though fully set forth here.

72.    The Minnesota Supreme Court has defined the contours of a claim for conversion:

> "Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right." *First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton,* 2008 S.D. 83, ¶ 38, 756 N.W.2d 19, 31 (quoting *Chem–Age Indus., Inc. v. Glover,* 2002

S.D. 122, ¶ 20, 652 N.W.2d 756, 766). In *Rensch v. Riddle's Diamonds of Rapid City, Inc.,* 393 N.W.2d 269, 271 (S.D.1986), we quoted *Poggi v. Scott,* 167 Cal. 372, 375, 139 P. 815, 816 (1914), for the following proposition:

> The foundation for the action of conversion rests neither in the knowledge nor the intent of the Defendant. It rests upon the *unwarranted* interference by Defendant with the dominion over the property of the Plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action.

(Emphasis added.) Furthermore, in order to prove conversion, the Plaintiff must show

> (1) [Plaintiff] owned or had a possessory interest in the property; (2) [Plaintiff's] interest in the property was greater than the [Defendant's]; (3) [Defendant] exercised dominion or control over or seriously interfered with [Plaintiff's] interest in the property; and (4) such conduct deprived [Plaintiff] of its interest in the property.

*First Am. Bank & Trust, N.A.,* 2008 S.D. 83, ¶ 38, 756 N.W.2d at 31.

W. Consol. Co-op. v. Pew, 2011 S.D. 9, ¶ 22, 795 N.W.2d 390, 396–97.

73. Plaintiff held a possessory interest in all of the personal funds in Plaintiff's bank account later unlawfully accessed by Defendant through this fraudulent EFT.

74. Plaintiff's interest in the Funds was greater than any interest held by Defendant.

75. Defendant deprived Plaintiff of the property interest in those Funds by taking them without Plaintiff's authorization in violation of its obligations under EFTA.

76. Defendant did not return or offer to return Plaintiff's personal property it took from Plaintiff without right, consent or permission and Plaintiff had to spend her personal time and money to get these funds back into her bank account.

77.   Defendant's interference with Plaintiff's property rights in these Funds was a substantial one for which Plaintiff has suffered serious damages.

78.   Defendant exercised complete dominion or control over, or seriously interfered with, Plaintiff's interest in these Funds and such conduct deprived Plaintiff of all interest in the Funds.

79.   The foregoing acts and omissions of Defendant and its employees and agents constitute a civil conversion of Plaintiff's personal property.

80.   The proper measure of damages in a conversion case in Minnesota is the value of the property taken plus interest. Rensch v. Riddle's Diamonds of Rapid City, Inc., 393 N.W.2d 269, 274 (S.D. 1986) ("In actions for conversion, it is generally recognized that interest on the value of the property converted may be recovered from the date of conversion to the date of trial. The purpose of the award is to compensate the Plaintiffs for the loss sustained because of the taking of the property. Interest on the amount recovered may be allowed as a matter of right or by virtue of statutory provision. 18 Am.Jur.2d § 121.")

81.   As a result of Defendant's conversion, Plaintiff is entitled to damages in an amount based upon the value of the property converted, plus interest from the time of Defendant's conversion.

## COUNT V.

## CIVIL THEFT

82.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83.    Minn. Stat. § 604.14 provides that:

> A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.

84.    Defendant took Plaintiff's personal bank account funds through fraud and artifice and without Plaintiffs' knowing permission or consent and kept them, and in violation of state and federal law.

85.    Defendant did not return or offer to return Plaintiffs' personal bank account funds and thereby permanently converted them to its own purposes and use.

86.    The foregoing acts and omissions of Defendant and its agents constitute multiple acts of civil theft under Minnesota law.

87.    As a result of Defendant's civil thefts, Plaintiff is entitled to damages in an amount of the bank account funds taken by Defendant, plus interest, pursuant to Minn. Stat. § 604.14.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

- for an award of actual damages for fraud that were directly caused by relying on the fraudulent misrepresentations made by Defendant to Plaintiff regarding this alleged debt;

- for a declaratory judgment holding that Plaintiff owes nothing on this alleged debt;

- adjudging and decreeing that Defendant have engaged in the conduct alleged above, entering Judgment in favor of Plaintiff;

- for an award of all actual compensatory damages suffered;

- for an award of actual, statutory, and treble damages allowable under 15 U.S.C. §§1693h and 1693m(a)(2)(A), as set forth in the EFTA and Regulation E;

- for an award of actual damages in an amount based upon the value funds taken from Plaintiff, plus interest from the time of Defendant's conversion;

- for an award of actual damages in an amount based upon the value of all bank account funds taken from Plaintiff by Defendant's, plus interest from the time of the conversion, plus punitive damages as provided by law;

- for an award of actual damages in an amount based upon the value of all bank account funds taken from Plaintiff by Defendant, plus interest from the time of these civil thefts pursuant to Minn. Stat. § 604.14, plus punitive damages as provided by law;

- for attorney's fees and costs of suit as provided by state and federal;

- for both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

- for all other recoveries and fees otherwise permitted by these claims and by law;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 1, 2024          **THE BARRY LAW OFFICE, LTD**

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
1422 Asbury Street
St. Paul, MN 55108-2434
Telephone:  (612) 379-8800
pbarry@lawpoint.com

***Attorney for Plaintiff***

## NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

Miller v. Lankow, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones.** The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible.  Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.**  You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI.  Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.**  You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.**  This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.